JUDGE FRANK MONTALVO

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED

2023 DEC 18  PM 4: 15

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____ DEPUTY

| | |
|---|---|
| JOSHUA CACHO, a Texas resident, | § § § |
| Plaintiff, | § § |
| v. | § § |
| DMB FINANCIAL, LLC, d/b/a AMERICAN DEBT RELIEF, a Massachusetts Limited Liability Company, GLOBAL HOLDINGS LLC, a Oklahoma Limited Liability Company, and ARNOLD & SMITH LAW, PLLC, a Oklahoma Professional Limited Liability Company, | § § § § § § § § § |
| Defendants. | § § § |

EP23CV0455

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.      Plaintiff JOSHUA CACHO ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for the last two calls in this Complaint, in this case in El Paso County, Texas.

2.      Defendant DMB FINANCIAL, LLC ("DMB") is a Limited Liability Company organized and existing under the laws of Massachusetts and can be served via registered agent Corporation Service Company at 84 State Street Boston, Massachusetts 02109, United States.

3.      Defendant GLOBAL HOLDINGS LLC ("Global") is a Limited Liability Company organized and existing under the laws of Oklahoma and can be served via registered agent Global Holdings LLC at 4343 S 118th E Ave Suite 220 Legal Department Tulsa Oklahoma,

1

74146, United States.

4.      Defendant ARNOLD & SMITH LAW, PLLC ("ASL") is a Professional Limited Liability Company organized and existing under the laws of Oklahoma and can be served via registered agent Arnold & Smith Law, PLLC at 115 East California Ave STE 450 Oklahoma City, Oklahoma 73104, 74146, United States.

## JURISDICTION AND VENUE

5.      Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

## PERSONAL JURISDICTION

6.      This Court has specific personal jurisdiction over Defendants because they have repeatedly placed calls to Texas residents and derived revenue from Texas residents, and they sell goods and services to Texas residents, including Plaintiff.  Defendants purposefully directed phone calls into Texas.  Defendants purposefully spoofed Texas area codes to represent themselves as being local Texas-based companies.

## VENUE

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District.

8.      This Court has venue over Defendants because the calls at issue in this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

2

9.      In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14.     The TCPA provides a private cause of action to persons who receive calls in violation of 227(c) or a regulation promulgated there under. 47 U.S.C. § 227(c)(5).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

15.     According to findings of the FCC, the agency vested by Congress with authority to issue

regulations implementing the TCPA, automated or prerecorded telephone calls are a greater

nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16.     The FCC also recognizes that "wireless customers are charged for incoming calls whether

they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing*

*the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17.     The FCC requires "prior express written consent" for all autodialed or prerecorded

telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's

written consent to receive telemarketing robocalls must be signed and be sufficient to show that

the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing

the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded

messages by or on behalf of a specific seller; and (2) having received this information, agrees

unambiguously to receive such calls at a telephone number the consumer designates. In addition,

the written agreement must be obtained without requiring, directly or indirectly, that the

agreement be executed as a condition of purchasing any good or service.

18.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of*

*1991*,27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

regulations "generally establish that the party on whose behalf a solicitation is made bears

ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing*

*the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19.     The FCC confirmed this principle in 2013, when it explained that "a seller ... may be

held vicariously liable under federal common law principles of agency for violations of either

section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter*

*of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

**20.**     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d

946, 951 – 52 (9th Cir. 2009).

**21.**     The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or

produce telephone numbers to be called, using a random or sequential number generator; and (B)

to dial such numbers. *Id*. at § 227(a)(1)

**22.**     As to what type of dialing equipment constitutes an ATDS, the TCPA vests to the Federal

Communication Commission ("FCC") the responsibility to promulgate regulations implementing

the TCPA's requirements. *Id.* at § 227(a)(1).

**23.**     Over the last nineteen years, the FCC has repeatedly recognized that a predictive dialer is

an ATDS that is subject to regulation by the TCPA. In its 2003 Order, the FCC also defined a

"predictive dialer" holding:

[A] predictive dialer is equipment that dials numbers and, when certain computer software is

attached, also assists telemarketers in predicting when a sales agent will be available to take

calls. The hardware, when paired with certain software, has the capacity to store or

produce numbers and dial those numbers at random, in sequential order, or from a database of

numbers. As commenters point out, in most cases, telemarketers program the numbers to be

called into the equipment, and the dialer calls them at a rate to ensure that when a consumer

answers the phone, a salesperson is available to take the call.

**24.**     In 2008, the FCC affirmed "that a predictive dialer constitutes an automatic

telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."

**25.**     A corporate officer involved in the telemarketing at issue may be personally liable under

the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist.

LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code § 302.101

26.     The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in Texas.

27.     The Plaintiff may seek damages of violations of Texas Business and Commerce Code § 302.101 of to $5,000.00 per violation, reasonable costs of prosecuting the action, court costs investigation costs, depositions expenses, witness fees, and attorney's fees.

28.     Texas Business and Commerce code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading or deceptive act of practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right of remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

29.     The use or employment by any person of a false, misleading, or deceptive act or practice causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50

### FACTUAL ALLEGATIONS

30.     Plaintiff's personal cell phone ending in 9810 has been registered on the National Do-Not-Call Registry for more than thirty-one (31) days prior to the first call received from DMB's

6

agents.

**31.**      Plaintiff personally registered the cell phone at issue in this case on the National-Do-Not-Call Registry on May 21, 2021.

**32.**      Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

**33.**      Defendant DMB operates as a debt relief company.

**34.**      Between August 1, 2023, through November 29, 2023, Plaintiff received at least thirty-four (34) calls to his personal phone ending in 9810 from Defendant DMB soliciting Debt Relief services, and claiming to be calling from "American Debt Relief." Plaintiff told Defendant DMB's agents at least ten (10) times that he was not interested in their services and to not call back.

**35.**      Each DNC Request went ignored as Defendant DMB's employees continued to call Plaintiff over the next few months.

**36.**      Upon information and belief Defendant DMB's employees called Plaintiff more times over the last four (4) years that he is currently unaware of without the benefit of Discovery.

**37.**      On December 4, 2023, Plaintiff received what he believes to be Call #35 on his personal phone ending in 9810 with 817-631-5133 appearing on the caller ID. Plaintiff answered the phone and was greeted by an agent from defendant DMB calling on behalf of "American Debt Relief."

**38.**      Plaintiff engaged the agent for the purpose of identifying the company responsible for all the calls he had received from the company over the last few months. Plaintiff was then transferred to an agent by the name of Amber.

7

39.    During the call, Amber sent him a DocuSign email confirming the identity of the parties responsible. Plaintiff, after receiving the documents, told Amber that he wanted to cancel everything, have all of his information removed from the system, and to make sure that nobody from her company ever called him again.

40.    Between December 5, 2023, through December 7, 2023, Plaintiff received an additional six calls from Defendant DMB. On each call, Plaintiff informed the agent that he was not interested and told them to stop calling.

41.    Plaintiff did not have an established business relationship with Defendant DMB, nor did Plaintiff consent to the calls sent to his personal phone.

42.    Each and every solicitation call from Defendant DMB after August 01, 2023, was a knowing and willful violation of the TCPA as Plaintiff had Delivered a DNC request to Defendant DMB on August 01, 2023.

43.    Each and every call phone call between August 02, 2023, and December 07, 2023, was a knowing and willful violation as Plaintiff had informed Defendant DMB's agents he wasn't interested and to stop calling multiple times.

44.    Defendants Global and ASL made the collective decision to hire Defendant DMB to place phone calls and market their legal and debt relief services.

45.    Plaintiff made numerous DNC Requests to Defendant DMB's employees that were ignored.

46.    Plaintiff did not provide his phone number to Defendant DMB or their employees at any point.

47.    Upon information and belief, Defendant DMB did not have a written do-not-call policy while their telemarketers were sending Plaintiff the calls.

**48.**    Upon information and belief, Defendant DMB did not train their employees who engaged in telemarketing on the existence and use of any do-not-call list.

**49.**    Such conduct violates the TCPA and its implementing regulations, 47 CFR § 64.1200(d)(3) (requiring telemarketers to honor and record DNC requests when made).

**50.**    Defendant knew or should have known that its conduct would violate the TCPA and its regulations because Defendant DMB operates in a highly regulated telephone solicitation industry.

**51.**    DMB knew or should have known the requirements for making TCPA-compliant telemarketing calls and thus knew or should have known that the calls complained of herein violated the TCPA and its regulations.

**52.**    DMB is serial violator of TCPA as they have been sued multiple times for TCPA violations over the years and continue to violate TCPA regulations as it benefits them financially.

**53.**    Defendant knew or should have known the requirements for making TCPA, and Texas sales-compliant telemarketing calls and thus knew or should have known that the unauthorized telemarketing calls and the many disregarded DNC requests complained of herein violated the TCPA, and Texas Business Commerce Code 302.101 and all of their regulations.

**54.**    No emergency necessitated these calls.

## VICARIOUS LIABILITY OF DEFENDANTS ASL AND GLOBAL FOR SOLICITATION CALLS PLACED BY DEFENDANT

**55.**    Defendants ASL and Global are vicariously liable for the solicitation calls that were made by Defendant DMB.

**56.**     There is a direct linear link between the phone calls Plaintiff received and the contract

Plaintiff received that listed Defendant ASL and Global as the beneficiaries of the phone calls.

**57.**     The FCC is tasked with promulgating the rules and orders related to enforcement of the

TCPA.  47 U.S.C. § 227(b)(2).

**58.**     The FCC has explained that its "rules generally establish that the party on whose behalf

a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13

(1995).

**59.**     The FCC reiterated that a company on whose behalf a telephone call is made bears the

responsibility for any violations. *In re Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf

of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a

third party on another entity's behalf under 47 U.S.C. § 227(B)).

**60.**     The FCC confirmed this principle in a declaratory ruling holding that sellers such as

Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave consumers in
> many cases without an effective remedy for telemarketing intrusions. This would
> particularly be so if the telemarketers were judgment proof, unidentifiable, or
> located outside the United States, as is often the case. Even where third-party
> telemarketers are identifiable, solvent, and amenable to judgment limiting liability
> to the telemarketer that physically places the call would make enforcement in
> many cases substantially more expensive and less efficient, since consumers (or
> law enforcement agencies) would be required to sue each marketer separately in
> order to obtain effective relief. As the FTC noted, because sellers may have
> thousands of independent marketers, suing one or a few of them is unlikely to
> make a substantive difference for consumer privacy.
> *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote
> omitted) (alteration marks and internal quotation marks omitted

**61.**    *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

**62.**    More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

**63.**    The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

**64.**    To the contrary, the FCC—armed with extensive data about robocallers and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

**65.**    Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

**66.**    Defendants ASL and Global are legally responsible for ensuring the affiliates that make telemarketing calls on their behalf comply with the TCPA when so doing.

**67.**    Defendant ASL is prohibited from engaging in the direct solicitation of prospective clients with whom they do not have a prior existing relationship. ASL is barred from conducting solicitation by the American Bar Association.

**68.**    Defendants ASL and Global either hired Defendant DMB or entered into a contractual agreement with DMB, whereby DMB would refer clients to Defendants ASL in violation of the

American Bar Association rules prohibiting solicitation. ASL is violating bar association rules for economic profit and failure to hold them vicariously liable will undermine the bar association rules against solicitation.

**69.**     Defendants ASL and Global instructed Defendant DMB on which states to target with phone calls and provided the minimum debt and income requirement to qualify for the program.

**70.**     Defendants ASL and Global knowingly and actively accepts business referrals that originates through illegal telemarketing.

**71.**     Defendants ASL and Global knew, or reasonably should have known, that Defendant DMB was violating the TCPA on their behalf, but failed to take effective measures within their power to force DMB to cease that conduct.

**72.**     By hiring a company to make calls on their behalf, Defendant ASL and Global "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

**73.**     Defendants ASL and Global maintained interim control over the actions of Defendant DMB.

**74.**     Defendants ASL and Global had absolute control over whether, and under what circumstances, they would accept a customer from Defendant DMB.

**75.**     Defendants ASL and Global had day-to-day control over the actions of Defendant DMB, including the ability to prohibit them from using an ATDS to contact potential customers of Defendant ASL and the ability to require them to respect the National Do Not Call Registry.

**76.**     Defendants ASL and Global gave interim instructions to Defendant DMB by providing lead qualifying instructions and lead volume limits.

12

77.    Defendants ASL and Global supplied Defendant DMB with apparent authority to make the calls at issue in this Complaint.

78.    Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c. "[A]pparent authority can arise in multiple ways, and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

79.    A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

80.    Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

81.    Defendant ASL and Defendant Global are the liable parties as the direct beneficiary of the illegal telemarketing calls as it stood to gain Plaintiff as a customer when Defendant DMB solicited Plaintiff for debt relief services.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

82.    Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

**83.**     Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

**84.**     Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

**85.**     Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of Plaintiff's cell phone.

<u>**PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER**</u>

**86.**     The calls were to Plaintiff's cellular phone number 407-780-9810 which is Plaintiff's personal phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phones registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

<u>**CAUSES OF ACTION:**</u>

<u>**COUNT ONE:**</u>

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

**(AGAINST ALL DEFENDANTS)**

**87.**     Plaintiff incorporates the preceding paragraphs 1-86 as if fully set forth herein.

**88.**     Defendants' agents called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days

14

prior to the calls, for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

89.     Plaintiff was statutorily damaged at least forty-one (41) times under 47 U.S.C. § 227(c)(3)(F) by all Defendants by the telemarketing calls described above, in the amount of $500.00 per call.

90.     Plaintiff was further statutorily damaged because Defendant DMB willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

91.     Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

<u>COUNT TWO</u>
**(Violations of Texas Business and Commerce Code 302.101)**
**Failure to obtain a Telephone Solicitation Registration Certificate**
**(AGAINST ALL DEFENDANTS)**

92.     Plaintiff incorporates the preceding paragraphs 1-86 as if fully set forth herein.

93.     Defendants and/or their affiliates or agents made at least Forty-one (41) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.

94.     As a result of Defendants' and/or their affiliates or agent's violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code 302.302(a).

95.     As a result of Defendants' and/or their affiliates or agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including

court costs, deposition costs, and witness fees.  Tex. Bus. and Com. Code 302.302(d

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joshua Cacho prays for judgment against Defendants

DMB, Global, ASL,          jointly and severely as follows:

A.      Leave to amend this Complaint to name additional DOESes as they are

identified and to conform to the evidence presented at trial;

B.      An award of $1500 per call in statutory damages arising from the TCPA 47

U.S.C §227(c) intentional violations jointly and severally against the corporations for

41 calls.

C.      An award of $5,000 in statutory damages arising from violations of the

Texas Business and Commerce code 302.101 intentional violations jointly and

severally against the corporation for forty-one (41) calls

D.      An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law

and equity.

E.      Such further relief as the Court deems necessary, just, and proper.

### JURY
### DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

December 15, 2023,                          Respectfully

Joshua Cacho

16

Plaintiff, Pro Se
PO Box 26971
El Paso, Texas 79926
407-780-9810